733 F.Supp. 1127 (1990)
In re TERRA-DRILL PARTNERSHIPS SECURITIES LITIGATION.
Alan WESTHEIMER, et al., Plaintiffs,
v.
Herman FINESOD, et al., Defendants.
MDL Docket 791.
Civ. A. No. H-86-3808.
United States District Court, S.D. Texas, Houston Division.
March 27, 1990.
*1128 Susman Godfrey by William H. White, Richard Drubel and Karen Appel Oshman, Weiner, Strother & Blustein by R. Leonard Weiner, Houston, Tex., and Beigel & Sandler by Leigh R. Lasky, New York City, for plaintiffs.
Porter & Clements by Daniel K. Hedges, Richard O. Patterson and David L. Burgert, Houston, Tex., for defendant Laventhol & Horwath.

DECISION AND OPINION
MILTON POLLACK, Senior District Judge.[*]
This litigation has resulted in a recovery which when fully collected will provide a cash fund in court for the benefit of the class plaintiffs of $14,600,000. Additionally, the plaintiff class members will have been relieved of obligations on promissory notes in the face amount in excess of $150,000,000.
Counsel for the plaintiffs, three law firms, have applied for allowance of attorneys fees and reimbursement of expenses to be paid out of the fund in court. Consistent with the law of this circuit, counsel have cast their joint applications on the so-called "lodestar" analysis of the value of the services rendered based on the customary reasonable hourly fees charged by counsel, to be adjusted up or down by factors known as "multipliers," such as the results obtained, the quality of work performed, contingency of compensation dependent on success and other relevant considerations.
For the reasons appearing hereafter, the applications based on the theory assigned will be granted and the lodestar analysis with an appropriate multiplier will be applied to the extent applicable.

The Petitioners
Petitioners consist of three law firms: Susman Godfrey; Weiner, Strother & Blustein, P.C.; and Beigel & Sandler, Ltd. Susman Godfrey acted as lead counsel in litigating this action on behalf of the class and was formally appointed lead counsel on the case by this Court's order of June 26, 1989. The Weiner firm assisted Susman Godfrey in initially organizing the class and from time to time in helping with discrete tasks assigned by Susman Godfrey, such as assisting in responding to motions, preparing certain discovery and defending class members' depositions. The Beigel firm assisted Susman Godfrey initially in locating one of the former general partners of the Terra-Drill partnerships, Sam Simon, whose affidavit helped the class successfully resist defendants' initial motions for summary judgment. The Beigel firm also assisted the class in providing general information about Herman Finesod and his companies, in responding to defendants' motion before the Panel on Multi-District Litigation to transfer this case to New York and in defending the deposition of a class member. Although Beigel & Sandler initially filed individual, non-class actions in New York on behalf of certain Terra-Drill investors, these investors ultimately dismissed their suits in New York in order to participate as members of the class in this action. The Beigel firm seeks compensation in this fee petition only for work performed on behalf of the class.

The Litigation
The Terra-Drill Securities Litigation, so-called, was commenced in October 1986 with the initial filing of a class suit against 30 defendants asserting federal securities claims and pendent common law fraud claims involving a tax shelter scheme for the promotion of a patented terra-drill. Other later suits were ultimately centralized in this District and consolidated for coordinated pre-trial purposes by the Judicial Panel on Multi-District Litigation. At the request of Chief Judge DeAnda of the Southern District of Texas, because of congested calendar conditions, and with the approval of the Intercircuit Assignment Committee pursuant to 28 U.S.C. § 294(d), the undersigned was assigned to complete the pending discovery proceedings and to preside at the trial. Preparation having *1129 been completed, the case proceeded to trial by jury. Shortly before trial, settlements were concluded with the defendants available out of the original 30, with the exception of one defendant, Laventhol & Horwath, who was unable to reach a settlement with plaintiffs and elected to stand trial. As part of each plaintiff's investment in the Terra-Drill partnerships, each plaintiff had signed a full recourse note due at various times after 1991 to the various Terra-Drill partnerships. Each of the plaintiffs also assumed a portion of each Terra-Drill partnership's sublicense obligation to Mitchell Petroleum. As part of the pre-trial settlements with Mitchell Petroleum and each of the partnerships, the partnerships and Mitchell agreed to release plaintiffs from all notes and other obligations. This meant cancellation of full recourse notes of more than $150 million. In addition, cash settlements had been obtained from the defendants other than Laventhol & Horwath in the amount of $1.1 million which were paid into a settlement fund in the Registry of the Court.
Trial was commenced on November 27, 1989.
On December 8, 1989, the jury returned a verdict of $37,719,000 against the sole remaining defendant, Laventhol & Horwath, which was subsequently reduced to $36,050,310 in order to take into account the previous pre-trial settlements. The jury verdict represented the cash invested by the class members in the terra-drill project. Pre-judgment interest was then added to the judgment, raising the amount of the judgment to $72,625,310. After entry of judgment on the verdict, as amended, counsel were able to negotiate a settlement of the defendants' appeal under which Laventhol & Horwath agreed to pay $13.5 million into the settlement fund for plaintiffs in instalments over the next two years. The settlement was approved by the Court after a hearing held to consider all the relevant facts and circumstances including conditions on which Laventhol & Horwath could proceed on appeal without requirement of a full bond.

The Applicable Law
One of the recognized exceptions to the American rule of allocation of litigation costs is the "common fund" doctrine. Under the "common fund" doctrine, a person who maintains a lawsuit resulting in the creation, preservation or increase of a fund in which others have a common interest, may be reimbursed from that fund for litigation expenses incurred. The "common fund" doctrine contemplates "fair and just allowances for expenses and counsel fees" to be paid by those who have benefited from the efforts expended on their behalf. See Trustees of the Internal Improvement Fund v. Greenough, 105 U.S. 527, 536, 26 L.Ed. 1157 (1881).
In 1973, the Third Circuit decided Lindy Brothers, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp., 487 F.2d 161 (3d Cir.1973) ("Lindy I"), appeal following remand, 540 F.2d 102 (3d Cir.1976) ("Lindy II"), setting forth fee award guidelines which became commonly known as the "lodestar" method.
This circuit in determining appropriate attorneys' fees follows the twelve-factor approach set out by the court of appeals in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir.1974).[1] Although some district courts have recently chosen to express the award of attorney fees as a percentage of the fund recovered rather than in terms of a lodestar analysis, no court in this district has yet done so and the Fifth Circuit has not approved such an approach. (The factors enumerated by Johnson, however, emphasize "the results obtained" as a component of the fee *1130 award.) Whether expressed in terms of the Johnson factors or as a "percentage of recovery," however, the underlying policy is identical: in order to attract competent counsel to represent the class in protracted cases such as this one, courts look to award "customary fees" to class counsel, i.e., what class counsel would otherwise be able to receive from such services in the marketplace. See In re King Resources Co. Securities Litigation, 420 F.Supp. 610, 636 (D.Colo.1976).
The twelve factors enumerated in Johnson are: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Id. 717-719.
Although Johnson was a civil rights case involving a statutory fee award pursuant to 42 U.S.C. § 1988, it has been followed in "common fund" cases such as the Terra-Drill litigation.[2]See, e.g., Piambino v. Bailey, 610 F.2d 1306 (5th Cir.), cert. denied, 449 U.S. 1011, 101 S.Ct. 568, 66 L.Ed.2d 469 (1980).
The Fifth Circuit subsequently modified the way in which the Johnson factors were applied so as to approach the Lindy lodestar method. By first computing a fee using the time/rate factors (first and fifth Johnson factors) and then adjusting that fee either up or down in light of any of the other twelve factors which were applicable, the Fifth Circuit effectively adopted the lodestar approach of Lindy. See Graves v. Barnes, 700 F.2d 220, 222 (5th Cir.1983) ("[t]he Fifth Circuit recently adopted the `lodestar' method of calculating attorney fees") (citations omitted); Copper Liquor, Inc. v. Adolph Coors Co., 684 F.2d 1087, 1092-93 (5th Cir.1982) (Johnson calculation now establishes "a standard much like the lodestar method").
In the years since its adoption, the Lindy/Johnson lodestar approach has come under increased criticism. See Report of the Third Circuit Task Force, October 8, 1985 (Arthur R. Miller, Reporter), 108 F.R.D. 237 (1985). Some courts (outside the Fifth Circuit) have sought to de-emphasize the lodestar approach and award attorney fees based on a percentage of the fund bestowed on the class. See, e.g., In re Activision Securities Litigation, 723 F.Supp. 1373 [Current Volume] Fed.Sec.L. Rep. (CCH) ¶ 94,731 (N.D.Cal.1989).
The Supreme Court has never adopted the lodestar method for common fund cases. Indeed, in Blum v. Stenson, 465 U.S. 886, 900 n. 16, 104 S.Ct. 1541, 1550 n. 16, 79 L.Ed.2d 891 (1984), the court stated in dictum that under the "common fund" doctrine a reasonable attorney fee "is based on a percentage of the fund bestowed on the class." Nevertheless, the lodestar approach applying the Johnson *1131 factors continues to be followed by the Fifth Circuit. See Sims v. Jefferson Downs Racing Ass'n, 778 F.2d 1068, 1083-85 (5th Cir.1985).
The computation of attorney fees under Johnson requires the district court to go through a three-step process:
(1) determine the nature and extent of services provided by plaintiff's counsel;
(2) set a value on those services according to the customary fee and quality of the legal work; and
(3) adjust the compensation on the basis of the other Johnson factors that may be of significance in the particular case.
Copper Liquor, Inc., 684 F.2d at 1092; Sims, 778 F.2d at 1084. The first two steps result in a computation of the "lodestar" amount. In the third step, the lodestar is adjusted either up or down by any of the remaining twelve factors enumerated in Johnson. Id.
Each of the Johnson factors has been considered separately by the Court and evaluated and weighed in light of the Court's substantial experience in class stockholder and common fund cases, experience both as a practicing attorney and as a trial judge.
The Court has looked to awards made in similar cases both "within and without" this circuit which have varied widely in the use of the appropriate multiplier. Counsel, on the other hand, have cited decisions of many courts that have used multipliers from two to four in cases where quality of representation and success achieved were among the factors considered. See e.g., In Corrugated Container Antitrust Litigation, [1983-2] Trade Cases (CCH) ¶ 65,628 at 69, 175, 1983 WL 1872 (S.D.Tx.1983) (awarding multipliers up to 4.0) (collecting cases); James v. Meinke, [194-85] Transfer Binder Fed.Sec.L.Rep. (CCH) ¶ 91,933 (N.D. Tx.1984) (3.0 multiplier); Brewer v. Southern Union Co., 607 F.Supp. 1511, 1533 (D.Colo.1984) (collecting cases with multipliers from 2.0 to 4.0); Squillacote v. United States, 626 F.Supp. 127 (E.D.Wis.1985) (3.0 multiplier); In re Cenco, Inc. Securities Litigation, 519 F.Supp. 322 (N.D.Ill. 1981) (multipliers of 2 and 4); In re Gypsum Cases, 386 F.Supp. 959, 967 (N.D.Cal. 1974), aff'd, 565 F.2d 1123 (9th Cir.1977) (3.0 multiplier).
Counsel have submitted extensively detailed records summarizing the time spent on the services rendered and the expenses necessarily incurred. They have suggested multipliers by which they ask the Court to enhance the lodestar amounts based on the customary charges ascribed to each of the providers of the services and have indicated that the expenses claimed do not constitute ordinary overhead items. The Court has carefully scrutinized the reports submitted and accepts as fair and reasonable both the lodestar amounts claimed and the expenses incurred.
The Court has given due consideration to the Johnson factors as applied to the facts and circumstances here present with due regard for precedents in this circuit, and compared those with awards made out of this circuit for recoveries achieved in a similar order of magnitude in comparable circumstances and difficulties. Success in this case was exceptional. It is the judgment of the Court that Susman Godfrey, whose performance was of a superior character, is entitled to receive its lodestar figure enhanced by a 2 and ½ times multiplier. That, rounded off, yields an allowance of fees for services to date of $3,840,000, to be paid out of the recovery herein. The firm is also entitled to recover their unpaid expenses of $330,337, which are in addition to the $65,000 received earlier by court order.
It is contemplated that from now until final distribution has been made to the plaintiff class in 1992 that Susman Godfrey is obligated to continue their services which will involve substantial additional time and costs other than overhead. Counsel should exercise prudent judgment, however, in the work assigned to various attorneys and their staff to achieve closing. There are over 1000 members of the class who will have to be provided for. Organization and calculating the schedules of distribution, cutting of checks, corresponding with the *1132 class or representatives of its members, obtaining the necessary releases, finding the proper recipients and closing the distribution as well as other necessary tasks, all present many hours of anticipated work and not inconsiderable expense. Susman Godfrey has generously advised the Court that it intends to apply only for an award of ordinary attorneys fees and costs to perform these final phases of the litigation, with no multiplier or enhancement for hours to be expended hereafter.
The position of the other two firms in this litigation is substantially different from that of the lead counsel. They did not participate in the heavy work thrust on lead counsel. They did not participate in the crucial trial preparation and proceedings. Indeed, their time schedules show they were not even present at the trial. Their position herein after the initial filing of claims was that of performing auxiliary and basically routine and clerical services in addition to such legal tasks as were assigned to them by Susman Godfrey. In the circumstances, having reviewed in detail their affidavits and records, it appears that they will be compensated quite adequately in an amount consistent with their ordinary charges for time spent, on the basis of their own prescribed normal rates with reimbursement for their costs necessarily incurred. It should not be overlooked in utilizing the lodestar analysis that the emergent figure represents not only the actual cost to the firm of the services, but it embodies an enhancement which expresses the firm's profit normally included in setting its fees. To then enhance the already enhanced cost requires much more under the Johnson formulation to justify the grant of the enhancement by a multiplier.
The Court therefore finds that allowance of the lodestar figures presented by the auxiliary firms will represent an appropriate award to them, without need for enhancement by a multiplier; expenses are also allowed.
Accordingly, Weiner, Strother & Blustein are awarded fees of $128,670 and costs of $25,000 to be paid out of the recovery herein.
Beigel & Sandler are awarded fees of $45,470 and costs of $11,870 to be paid out of the recovery herein.
All fees as allowed herein shall be paid in installments proportionate with the cash portion of the recovery deposited from time to time in the Registry of the Court to the credit of this litigation. All disbursements allowed herein shall be payable currently.
Out of the amounts distributable to the plaintiff class, Susman Godfrey shall reserve a sum sufficient to cover its future costs of administration.
Proposed orders accordingly should be submitted promptly, on subjoined consent of counsel, for the Court's consideration.
NOTES
[*] Honorable Milton Pollack, Senior Judge for the United States District Court for the Southern District of New York sitting by intercircuit assignment in Houston, Texas, for this case.
[1] The Fifth Circuit's standards regarding attorney fee awards originated in an earlier district court opinion, Clark v. American Marine Corp., 320 F.Supp. 709, 711-12 (E.D.La.1970), aff'd, 437 F.2d 959 (5th Cir.1971) (per curiam), in which Judge Alvin Rubin, who would later join the Fifth Circuit, set forth eight factors that determined his award of attorneys fees. Judge Rubin based his factors on those set forth in DR2-106 of the ABA Code of Professional Responsibility. When the Fifth Circuit wrote its seminal Johnson opinion three years later, it simply adopted and expanded the standard set forth in Clark and, in turn, the Code of Professional Responsibility.
[2] Because the Terra-Drill litigation is a "common fund" rather than a statutory fee case, the Supreme Court's decision in Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987) ("Delaware Valley II"), is inapplicable. Delaware Valley II involved the determination of the attorney's fees under a fee-shifting statute, § 304(d) of the Clean Air Act, not an award of attorney's fees from a common fund. The holding of the plurality in Delaware Valley II was that "multipliers or other enhancement of a reasonable lodestar fee to compensate for assuming the risk of loss is impermissible under the usual fee-shifting statutes." Id. 107 S.Ct. at 3087 (emphasis added). No fee-shifting statute applies to the Terra-Drill litigation. The rationales articulated by the Supreme Court in support of its conclusion have no application to common fund cases such as the instant case. Principally, the Delaware Valley II Court was concerned that awarding lodestar multipliers would force losing defendants to compensate the plaintiff's lawyers "for not prevailing against defendants in other cases." Id. at 3086. Similarly, the Court believed that lodestar multipliers penalized defendants with the strongest case. Id. These concerns have no place in common fund cases, where defendants are not responsible for the compensation of plaintiff's attorneys.